## Petriken *against* Baldy.

In an action of assumpsit to recover the debt of a third person, the proof of the promise must be clear, explicit and certain, leaving no room for doubt or misapprehension.

In such case a book entry of the debt and the assumption of it, cannot be given in evidence, although aided by the proof of the clerk that he would not have made the entry but by the authority of the person who made the promise.

ERROR to the Common Pleas of *Columbia* county.

Peter Baldy against Dr David Petriken. This was an action of assumpsit to recover a debt due by Francis Tully to the plaintiff, upon the promise of the defendant to pay it in consideration of forbearance.

The plaintiff offered in evidence an item of charge in his book, in the account of the defendant, "21 July 1831 amount answered for Hugh Laughlin $2.89," with proof by the clerk who made the entry, that he would not have made it without the defendant's direction, that this was his invariable mode of making such entries, both as regards the defendant and other persons. The defendant objected. The court overruled the objection and sealed a bill of exceptions.

The evidence of the assumption by the defendant was given by the clerk of the plaintiff as follows:

"The account was shown to Dr Petriken in the forepart of Oct. 1830, on or after the 5th of Oct. 1830. I was clerking for Mr Baldy at the time; he was absent in the city purchasing goods; before he went to the city, he gave me a charge respecting some of the contractors on the Pennsylvania Canal line that had been dealing with us; the estimate was to have been drawn while he would be absent. Among the contractors indebted to Baldy at that time was Francis Tully, and the principal one I was charged with attending to. I was directed to call on Dr Petriken for the amount of this bill, having been assumed by him on the morning the estimate was to be paid over to the contractors. I came out to make some inquiry about these persons indebted to Mr Baldy, and I conversed with a number of persons about the probability of the estimate being paid that day. I met Dr Petriken, asked him about some of the contractors, and told him I was directed by Baldy to call on him for the amount of this bill against Tully. I had not the bill with me; he (the Doctor) replied that I had better attend to some other accounts; that there were other accounts that were much more in danger of being lost; that he and Baldy would fix that themselves; that Francis Tully could

[Petriken v. Baldy.]

not draw any money from the Canal Commissioners; that the money came through his (the Doctor's) hands; that he had the drawing of the money in that contract. This was the substance of the conversation at the corner, and I returned to the store. On the same day, and about the middle of the day, the Doctor called in at the store and asked to see the bill against Francis Tully, and I handed him this bill, this very paper in my own handwriting. He took it and added it up; it had been added up to $274.52½ at the date 28th Sept. 1830; from that date to 5th Oct., inclusive, there had been five charges made that was not added up; that he footed up, making the amount $343.52¾. He noted the amount down on a letter or piece of paper and took it with him. The Doctor put this same amount down in pencil on this account; the marks are here yet. He only wanted the amount, I was going to show him the items. He replied he only wanted the amount of the account. I showed this account to Francis Tully, before I saw the Doctor at the corner; it was shown to him at different times, and also that day of the estimate; he admitted it to be correct. He never paid it nor anybody else."

The defendant requested the court to instruct the jury that the evidence, taken to be true, is not sufficient to charge the defendant with the debt. But the court was of a different opinion, and submitted the evidence to the jury, who rendered a verdict for the plaintiff.

*Cornby* and *Greenough* for plaintiff in error, cited 5 *Rawle* 69; 3 *Watts* 213; 1 *P. R.* 385; 2 *P. R.* 521; 3 *T. R.* 653.

*Cooper* and *Bellas* contra, cited 1 *Salk.* 29; 6 *Whart.* 568; 1 *Saund. Pl. & Ev.* 171.

The opinion of the Court was delivered by

ROGERS, J.—It has been frequently regretted that the fourth clause of the Statute of Frauds, 29 *Car.* 2, ch. 3, which requires that to charge a person for the debt, default or miscarriage of another, the agreement should be in writing, was not extended to this State. In Pennsylvania, however, the law is otherwise, for such agreements may be proved by parol; but as a protection against fraud, it is required that the evidence of the promise should be clear and explicit, that there should be no room to suspect mistake, misapprehension, or any unfairness in the transaction. The first objection is contained in the first bill of exceptions. It is the charge in the book account, against the defendant, of the assumption of the debt of Hugh Laughlin. It is not pretended that this is such an item as is properly chargeable in a book account, but it is insisted that with the aid derivable from the clerk who made the entry, it was properly received in evidence. He says he would not have made the entry, he is satisfied, unless the defendant, Doctor Petriken, had directed it. That it was the

[Petriken v. Baldy.]

usual way of entering the amount, when a person assumed for another, charging the amount assumed. That it was the custom not to charge with Mr Baldy's house without the authority of the person who assumed to pay for another. He says he never put a charge on the book without the direction of the person who had assumed. He thinks he never made such an entry by direction of Mr Baldy alone. He has no recollection of making the entry. It is his handwriting. We think the testimony entirely too uncertain and unsatisfactory. It is not unreasonable to require clear and explicit proof of the agreement; and this is absolutely necessary to guard against fraud. If by an inspection of the book he had remembered that the entry was made on the authority of the defendant, it would be a different question, for the book is only important as a means of refreshing the memory of the witness. But, unfortunately, he has no recollection whatever of it. And the only evidence of the agreement is an inference, which he derives from the fact that it is in his handwriting, and his belief that he never put such charges in the books without the direction of the person who had assumed to pay.

In connection with this, is the charge of the court in relation to the assumption of the debt against Francis Tully. It is alleged that the defendant assumed to pay this bill. That Tully was indebted to the plaintiff, would not seem to be questioned; but did the defendant assume to pay the debt? The only evidence we have of the agreement is contained in the testimony of Mr Clayton, who, after speaking of the request of the plaintiff that he should, as his clerk, call on Doctor Petriken for the amount of Tully's debt, says, on the morning the estimate was to be paid over to the contractors, he met Doctor Petriken and asked him about some of the contractors, and told him he was directed by Mr Baldy to call on him for the amount of this bill against Mr Tully. He had not the bill with him. The Doctor replied, that he had better attend to some other accounts, which were, as he said, much more in danger of being lost than this; that he and Mr Baldy would fix that themselves. That Tully could not draw any money from the Canal Commissioners, as he (the Doctor) had the drawing of the money on that contract. That there was some understanding between the plaintiff and defendant in relation to the debt of Tully may be reasonably inferred from the evidence, but what the contract or agreement was, nowhere appears. The money due Tully on his contract was to come through the hands of the defendant, but as it belonged to Tully, Doctor Petriken would have no right to pay it to Baldy without the assent of Tully, and there is no proof that Tully assented to any such disposition of the money. But did the defendant make himself absolutely responsible to the defendant, and if so, what was the consideration of the promise to pay? Of the nature of the agreement we are left in the dark, and of any

[Petriken v. Baldy.]

consideration I cannot perceive a particle of proof. Of these material points we are left entirely to conjecture. To make the defendant amenable for this debt, it is necessary for the plaintiff to prove, distinctly, the agreement or promise to pay the debt, and that the promise was made on a sufficient consideration. On both points the plaintiff's proof is defective. In the declaration it is alleged that the promise is in consideration of forbearance. It cannot be seriously contended that there was any contract made with Clayton, who acted as the agent of Baldy; if his evidence proves anything, it proves a pre-existing contract between Petriken and Baldy. It appears that Tully was a sub-contractor under Petriken, and that the money, under some arrangement, was receivable by Petriken; but that would not authorize Petriken to pay Baldy without Tully's consent, and such assent is neither shown nor alleged. Why, then, should Petriken assume to pay this debt? What reason had he, what motive or consideration was there moving from Baldy to induce him to become liable for the debt of Tully, when, under the evidence, if he paid he must do so at his own risk? We may readily believe, that standing in the relation he does to Baldy and Tully, he may have been willing to lend his friendly aid to Baldy in collection of the debt he had against Tully. But beyond this, no legitimate or safe inference can be drawn. On neither point, therefore, does it seem to me that the plaintiff has given such evidence as we have a right to require, for it must be remembered, on him is thrown the burthen of proof. On another trial, the declaration may be amended so as to avoid the objections made to it. It may be sufficient to observe, that in the other point we perceive no error.

Judgment reversed, and *venire de novo* awarded.